582 A.2d 674

**William C. DOWNEY**

**v.**

**Elsie L. DOWNEY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1990.

Filed Nov. 15, 1990.

440

Elsie L. Downey, pro se.

Philip K. Core, Pittsburgh, for appellee.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an equitable distribution order entered by the trial court.

Appellant presents the following issues for review: (1) whether the trial court erred in awarding appellee 60% of the marital real property without considering: the length of separation of the parties, the length of time involved in court proceedings, the premarital assets that were used to acquire the marital real property, and appellant's contributions towards preserving and maintaining the marital property; (2) whether the trial court erred in failing to consider the effect of its equitable distribution award upon appellant; (3) whether the trial court erred in concluding that appellant has income which cannot be substantiated; (4) whether the trial court erred in concluding that the certificates of deposit were marital property, where appellee transferred the certificates to his children and made no claim to the funds for a lengthy period of time; [1] (5) whether the trial court's order violated the Equal Rights Amendment to the Pennsyl-

---

1. Although appellant discusses this issue in her brief, we note that it does not appear in appellant's statement of questions as required by Pa.R.A.P. 2116(a). Despite appellant's failure to comply with this rule, we shall overlook this defect as it does not preclude us from engaging in a meaningful review of this issue. Accordingly, we shall discuss the merits of this question in addition to the other matters raised by appellant.

vania Constitution; and (6) whether the trial court erred in disallowing testimony regarding appellant's claim for counsel fees, and if so, whether the trial court erred in failing to appoint a master to hear this testimony. For the reasons set forth below, we affirm in part and reverse in part the order of the trial court and remand for further hearing.

Before addressing the issues raised by appellant, it is necessary to recount the relevant facts of this case. Appellant, Elsie Downey (wife) and appellee, William Downey (husband) were married in Hawaii on October 7, 1945. Following their marriage, the parties returned to Pittsburgh, Pennsylvania, where they acquired the marital property which is the subject of this dispute. Specifically, the property consisted of a parcel of land located in the Sewickley area of Pittsburgh. At the time of purchase, a house existed on the land. The parties paid a total of $7,000.00 for the property; $4,000.00 of this amount was borrowed from appellant's mother[2] with the remainder of the purchase price supplied by the parties from their earnings and/or savings.[3] Later in their marriage, appellee constructed a second dwelling on the property with the assistance of his brother-in-law and general contractors who were hired to complete the remaining work. This residence cost approximately $11,000.00 to construct. The first house was thereafter used as a rental property.

Due to marital disharmony, the parties separated on July 4, 1969, and this litigation ensued. Following the parties' separation, appellee moved out of the marital residence. After he left the marital home, appellee paid some of the utility bills and taxes on the property, however, he did not significantly contribute to the preservation or maintenance

2. The parties repaid $2,000.00 of this loan; the remaining $2,000.00 was forgiven by appellant's mother.

3. We note that there was some disagreement as to the source of the funds used to purchase the property. Appellant testified at trial that the remainder of the purchase price was supplied by her personal earnings and savings, *see* Hearing Transcript, 6/8/89, at p. 131, whereas appellee stated that the balance of the purchase price came from both his and appellant's earnings and savings. *See* Hearing Transcript, 7/6/89, at p. 17.

of the marital property except to provide support for the parties' children.[4] Appellant, however, continued to reside in the marital home with the children, and continued to rent the other dwelling. During this time, appellant paid all the taxes on the property and maintained the property and the dwellings.

During the parties' marriage and period of separation, appellant was employed in various jobs at Dixmont Hospital, the Allegheny County Health Department and the Sewickley Public School System. Appellee was also continuously employed throughout the marriage and separation period, primarily at Jones & Laughlin Steel Co. (now LTV Steel Co.). Since the commencement of the divorce action, both parties have retired and receive pension and/or social security benefits.

Neither party initiated divorce proceedings until 1982 when appellee filed a divorce complaint. Throughout the next seven years, the parties engaged in discovery proceedings relating to the equitable distribution of the parties' marital property. Also during this time period, the parties engaged in litigation relating to the distribution of appellee's pension and the bifurcation of the divorce action from the equitable distribution matters. Hearings on the equitable distribution matters were finally held before the trial court in June and July, 1989. On July 12, 1989, the trial court issued its order and memorandum in support thereof, in which appellant was awarded the marital residence. However, the trial court directed appellant to pay appellee 60% of the value of the real property plus 10% simple interest.[5] In addition, the trial court denied the

**4.** Three children were born during the marriage. At the time of the parties' separation, one child had already reached the age of majority, and the other two children were minors. Shortly after appellee left the marital residence, appellant initiated support proceedings against appellee. The record indicates that the parties each filed numerous petitions to have support increased or decreased from the time that the parties separated until 1975, when the parties' youngest child no longer needed support.

**5.** After hearing extensive testimony as to the value of the real property and the dwellings constructed thereon, the trial court found that the

parties' requests for alimony, counsel fees and equitable distribution. The parties were thereafter divorced by decree entered on July 24, 1989.

Appellee filed exceptions to the trial court's equitable distribution order on July 31, 1989. Appellant contested the timeliness of the exceptions and filed a motion to strike appellee's request for post-trial relief. The trial court denied the motion on September 22, 1989, and subsequently found appellee's exceptions to have been timely filed. *See* Memorandum and Order of Trial Court, dated 1/29/90. Following the trial court's denial of appellant's motion to strike, appellant was given permission to file exceptions within ten days of the trial court's September 22, 1989 order. *See* Order, dated August 8, 1989. Appellant filed her motions for post-trial relief on October 10, 1989. Appellee challenged the timeliness of appellant's post-trial motions and filed a motion to strike appellant's motion for post-trial relief; appellee's motion was denied by the trial court.[6] On November 30, 1989, the trial court entered an order which denied both parties' post-trial motions and made final its order of July 12, 1989. Appellant thereafter filed this timely *pro se* appeal on December 29, 1989. Although appellant petitioned the trial court to stay the effect of its order, appellant's request was denied on February 20, 1990.

On appeal to this court, appellee filed a motion to dismiss the appeal because of appellant's failure to include the hearing transcript in the reproduced record and failure to file the designated reproduced record on appellee. Al-

property would have had a fair market value of $70,000.00, if the rental property had been adequately maintained. However, because of damage to this dwelling, the trial court found the fair market value of the property to be $60,000.00. Accordingly, appellant was required to pay appellee 60% of this sum or $36,000.00.

**6.** According to the docketing statement, this motion appears to have been filed with the court on January 29, 1990, however, the trial court denied the motion on November 6, 1989. Therefore, the trial court must have been presented with the motion prior to the entry of its order on November 6, 1989, even though the record does not so indicate.

though appellee's motion was denied, he was given leave to present this issue to the panel.

■ Before proceeding to the merits of this appeal, we must first determine whether appellant's post-trial motions were timely filed, and if not, whether this appeal should be quashed. With respect to this issue, the Pennsylvania Supreme Court has mandated that where a trial court ignores a party's failure to file a timely request for post-trial relief and addresses the merits of the motions, an appellate court is not free to quash the appeal. *See Kurtas v. Kurtas*, 521 Pa. 105, 109, 555 A.2d 804, 806 (1989). In this case, the trial court denied appellee's objection to appellant's untimely post-trial motions, and reviewed the merits of appellant's post-trial motions. *See* Trial Court Supplemental Memorandum, dated February 9, 1990. Therefore, as directed by our Supreme Court, we are precluded from quashing the appeal on this basis.

■ The next preliminary matter which we must address involves appellee's motion to dismiss the appeal because of appellant's failure to comply with Rules 2154 and 2188 of the Pennsylvania Rules of Appellate Procedure. Appellee argues that the appeal should be dismissed because appellant failed to include a copy of the entire hearing transcript in the reproduced record. Further, appellee alleges that appellant's failure to serve him with a copy of the designated reproduced record prevented him from designating other parts of the record for review by this court, and did not put him on notice as to the parts of the record upon which appellant relied. We find these arguments to be without merit.

Pa.R.A.P. 2156 expressly permits an appellee to file his own supplemental reproduced record with the court where the parties are unable to cooperate on the preparation of the reproduced record. Once it became apparent to appellee that the entire transcript was not contained in the reproduced record, appellee could have supplemented the record by the addition of the transcript or any other materi-

al which he deemed to be relevant. In addition, a copy of the hearing transcript is contained in the certified record; thus, appellant's failure to include this document in its entirety in the reproduced record does not preclude us from engaging in meaningful review of the issues raised by appellant. *See e.g., O'Neill v. Checker Motors, Corp.*, 389 Pa.Super. 430, 433, 567 A.2d 680, 681–682 (1989) (appellate court will decline to quash an appeal where effective appellate review is not precluded by the deficiencies of appellant's brief.). Accordingly, we deny appellee's motion to dismiss the appeal, and will proceed to address the issues raised by appellant.

■ In evaluating the propriety of an equitable distribution order entered by the trial court,

> our standard of review is whether the trial court, by misapplication of law, or failure to follow proper legal procedure, abused its discretion.... Moreover, 'an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.' ... Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom[,] against the provisions of 23 P.S. § 401(d), and the avowed objectives of the Divorce Code, that is, to 'effectuate economic justice between [the] parties ... and insure a fair and just determination of their property rights.' 23 P.S. § 102(a)(6).

*Zollars v. Zollars*, 397 Pa.Super. 204, 207–208, 579 A.2d 1328, 1330 (1990) (internal citations omitted) (opinion by Kelly, J.), citing *Hutnik v. Hutnik*, 369 Pa.Super. 263, 266–267, 535 A.2d 151, 152 (1987) and *Liciardello v. Liciardello*, 391 Pa.Super. 219, 222–223, 570 A.2d 1062, 1063 (1990). We shall evaluate appellant's arguments with this standard in mind.

Appellant first argues that the trial court erred in awarding 60% of the marital property to the husband because the trial court failed to consider the following factors: the length of time the parties were separated; the fact that appellant's nonmarital funds were used to acquire the mari-

tal real estate; the fact that appellant was solely responsible for maintaining and repairing the real estate during the parties' separation; and the trial court's adoption of the fair market value suggested by appellee's appraiser. In addition, appellant challenges the trial court's use of the current fair market value of the house rather than the value of the house at the time of the parties' separation.

■ The Divorce Code sets forth the factors which the trial court must consider in dividing marital property between the parties. These factors are as follows:

(1) The length of the marriage;

(2) Any prior marriage of either party;

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 P.S. § 401(d)(1)–(11). However, in applying these factors, the trial court must not lose sight of the overriding objective of the Divorce Code, which is to "[e]ffectuate

economic justice between the parties ... and insure a fair and just determination and settlement of their property rights." 23 P.S. § 102(a)(6).

In awarding appellee 60% of the marital property, the trial court stated that it considered:

the parties' ages, the amount and sources of income, their needs, their assets, their sources of income, the contribution and dissipation of each party in the acquisition, preservation, and appreciation of the marital property, the wife's contribution as a homemaker and the economic circumstances of the parties.

Trial Court Opinion, dated July 12, 1989, at p. 6. In addition, the trial court took into account:

the wife's control [of] over more than $30,000 of the parties' funds, the husband's receipt of the life insurance, the wife's greater income, the wife's living in the marital residence that was not subject to a mortgage without paying rent, the wife's receipt of the rental income from the second residence, and the wife's failure to maintain the second residence.

*See* Trial Court Opinion, dated July 13, 1989, at pp. 6–7.

■ In evaluating the trial court's findings in view of the testimony presented at the hearing, it is evident that although the trial court stated that it considered the parties' contributions in maintaining the marital real estate, in fact, the trial court only paid cursory attention to appellant's contributions. Both parties attempted to present evidence at the hearing as to the payment of property taxes and the amounts expended on the maintenance of the property, however, the trial court would not permit this evidence to be introduced. *See e.g.,* Hearing Transcript, 6/8/89, at pp. 163–164, and Hearing Transcript, 7/6/89, at p. 38. Since the trial court found it significant that appellant resided in the marital residence without paying rent, it should at least have permitted her to present evidence relating to the amount of money she spent towards the payment of property taxes, maintenance and repairs. In addition, the trial court made no specific finding as to whether the $3,000.00

used to initially purchase the property was supplied by appellant. We find this to be relevant, because property which is acquired prior to marriage and which is later exchanged for marital property is to be excluded from consideration by the trial court. *See* 23 P.S. § 401(e)(1). *See also, Lowry v. Lowry,* 375 Pa.Super. 382, 390, 544 A.2d 972, 976 (1988). Because we find that the trial court erred in failing to consider all the relevant evidence with respect to appellant's contributions towards the acquisition, maintenance and preservation of the marital estate, it is necessary to remand this matter for further hearing.

■ We next address appellant's contentions relating to the length of the parties' separation and the date used to value the property. Appellant believes that because appellee left the marital residence in 1969, it would have been more appropriate to value the property as of that date, rather than using 1989 property values. Essentially, appellant argues that the doctrine of laches bars appellee from sharing in the post–1969 increase in value of the property.

■ This court recently addressed a similar issue in *Doppler v. Doppler,* 393 Pa.Super. 600, 574 A.2d 1101 (1990), where we observed that "[l]aches will bar a claim when it appears that, under the circumstances, the plaintiff is chargeable with a lack of due diligence in failing to assert his rights which works to the prejudice of the another." *Doppler,* 393 Pa.Super. at 609, 574 A.2d at 1106. Thus, in order for laches to apply, the party seeking to assert this defense must prove "not only a passage of time, but also a resultant prejudice...." *In re: Estate of Doerr,* 388 Pa. Super. 474, 478, 565 A.2d 1207, 1209 (1989). We do not believe that appellant has sustained her burden with respect to the element of prejudice in this case.

First, we note that appellee was not obligated to proceed with the divorce action and have the property distributed, nor was appellee required to file a partition action to have the property divided. In addition, if appellant wanted to procure an immediate division of the marital property, she

could have initiated her own divorce or partition action independently of appellee. As a result, appellee's conduct cannot be deemed prejudicial to appellant, since she, just as easily as appellee, could have initiated the divorce proceedings in order to secure a division of the property and protect her interests. *Cf. Doppler, supra.*[7] Further, using a 1989 rather than a 1969 value does not prejudice appellant, because the trial court must consider her contributions towards the maintenance of the property. Thus, appellant's expenditures can be taken into account when the property is divided.

■ Contrary to appellant's arguments, the appellate courts have long recognized that marital property must be evaluated as closely as practicable to the date of distribu-

---

**7.** In *Doppler,* the parties were divorced in 1964. Following the entry of the divorce decree, Mr. Doppler filed a partition action to divide the parties' marital property. The parties then agreed that Mrs. Doppler would receive title to the marital residence in exchange for her payment of one-half of the equity value of the home to Mr. Doppler. Although Mrs. Doppler satisfied the other provisions of the settlement agreement and was willing to pay Mr. Doppler his share of the equity value, Mr. Doppler failed to appear at the settlement hearing. During the next twenty years, Mrs. Doppler paid off the mortgage on the home and assumed complete responsibility for maintaining the property. Subsequently, Mr. Doppler instituted a second partition action in 1984 in which he sought to recover one-half of the value of the former marital residence, which had substantially appreciated in value. On appeal, we held that the doctrine of laches applied to preclude Mr. Doppler from proceeding with the second partition action. In reaching this result, we found that Mr. Doppler had failed to perform his part of the settlement agreement and had failed to protect his interest by diligently pursuing the first partition action. Further, we held that Mrs. Doppler would be prejudiced if she were required to pay Mr. Doppler one-half of the appreciated value of the home when she had paid the mortgage on the property and had maintained the home without any contribution from her former husband.

The case before us presents a different situation than *Doppler.* In *Doppler,* a partition proceeding was filed with the court and the parties had agreed upon a settlement. In this case, however, no proceeding was ever initiated with the court. More importantly, we are unable to discover any authority which requires married parties to file divorce or partition proceedings where they prefer to live separate and apart but continue to hold their property as husband and wife. For these reasons, we believe the doctrine of laches should not be applied so as to preclude appellee from receiving the post-separation share of the marital property.

tion. *See Gioia v. Gioia,* 382 Pa.Super. 538, 542–543, 555 A.2d 1330, 1333 (1989), citing *Sutliff v. Sutliff,* 518 Pa. 378, 383, 543 A.2d 534, 537 (1988). In view of these authorities, we find no error in the trial court's use of current fair market appraisals, rather than the 1969 value, in assessing the value of the marital property.

▮▮▮ Appellant also contends that the trial court erred in adopting the fair market value of the property proposed by appellee's expert. In support of her position, appellant suggests that her expert was more reliable than appellee's expert because of his familiarity with the area and because appellee's expert erroneously compared the marital residence with properties located in other neighborhoods which were not in close proximity to the marital real property.

With respect to these arguments, the record indicates that appellant's appraiser valued the rental property at $18,000.00 and the marital residence at $35,000.00. *See* Hearing Transcript, 6/8/89, at p. 12. In combining these amounts, the value of the real estate would then total $53,000.00. Appellee's appraiser, however, valued the marital residence at $55,000.00 and the rental property at $15,-000.00. *See id.,* at pp. 59 and 66–67. Thus, appellee's appraiser estimated the total value of the real property to be $70,000.00. In comparing the expert testimony, the evaluations of the rental property were very close in amount, whereas their assessment of the marital residence varied by $22,000.00.

To account for these variations, the appraisers explained that they had used different methods of attributing the real property in their appraisals. *See* Hearing Transcript, 6/8/89, at pp. 13–16 (testimony of appellant's expert in which he attributed the greater portion of the land to appellant's residence and less land to the rental property) and p. 58 (testimony of appellee's expert in which he divided the property between the two residences). In addition, the experts compared the marital residence with other comparable residences in the area.

In reviewing the hearing testimony, we are unable to conclude that the trial court's adoption of the fair market value suggested by appellee's expert was erroneous. Each expert explained the reasons for his valuation of the property and was subjected to vigorous cross-examination by counsel. Because the trial court was in a superior position to observe the experts and assess their credibility, we are unable to conclude that the trial court abused its discretion in finding the valuation by appellee's expert more reliable than that suggested by appellant's expert. Accordingly, we affirm the trial court's finding with regard to the valuation of the residence.

In sum, we affirm the trial court's use of the 1989 value in assessing the value of the marital property. Further, we affirm the trial court's finding as to the 1989 fair market value of the residence. However, because the trial court held the wife accountable for living in the property without paying rent and prohibited her from presenting evidence as to her contributions in acquiring, preserving and maintaining the property, we find it necessary to remand this matter to the trial court for further hearing.

Appellant's second assertion of error is that the trial court failed to consider the effect of its equitable distribution order on appellant. To support her argument, appellant sets forth calculations of both her income and appellee's income in her brief. *See* Appellant's Brief at p. 23. However, appellant's calculations fail to take into account the fact that she receives $381.00 in income regarding the loan repayment owed by her son. Although appellant testified that she intends to forgive the loan, appellant must still be credited with the receipt of this income, as she cannot be permitted to voluntarily reduce her income merely to deprive appellee of his share of the marital property.

In addition, appellant failed to take into account her receipt of income from the rental property, which the trial court found to be $350.00. Testimony was taken at the hearing that the property was rented at this rate. *See* Hearing Transcript, 7/6/89, at p. 29. However, appellant

alleges that it will be difficult for her to find a tenant because of the condition of the rental property. Further, appellant states that she tried to borrow money to repair the property, but was unable to do so because of appellee's refusal to cooperate. Now that the parties are divorced and appellant has been awarded the real property, appellee's cooperation is no longer necessary and appellant should be able to acquire the necessary funds to repair the property. Assuming that the property is repaired, appellant will then be able to rent the property and receive income. However, even if the property is not repaired, there was evidence that appellant was successful in finding a tenant who was willing to rent the property at the $350.00 rate. Thus, we find her arguments on this subject to be without merit.

Appellant also erred in considering only $91.00 of the income received from appellee's pension. During the hearing, appellant admitted that this amount was $240.00, however. *See* Hearing Transcript, 6/8/89, at pp. 171–172. As discussed below, appellant offers no information as to how she has arrived at this result. Consequently, $240.00 rather than $91.00 must be used in calculating appellant's income.

Finally, appellant has omitted her investment income of $1,500.00 from her calculation. At the hearing, she testified that she received this amount, see Hearing Transcript, 6/8/89, at p. 172. Although appellant argues in her brief that this sum has been exhausted, such information was not presented to the trial court. Therefore, this sum must also be included in appellant's calculations.

In considering all of the above sums which appellant has omitted from her calculations, the disparity between appellant's and appellee's incomes is not as substantial as appellant suggests. Further, when the omitted income is added to appellant's calculations, we find that appellant would have sufficient ability to pay appellee the amount ordered by the trial court. Accordingly, we find that the trial court did not err in failing to consider the effects of its order on appellant.

■ The third issue raised by appellant concerns the trial court's findings as to appellant's income. Specifically, appellant disputes the trial court's attribution of the $381.00 loan repayment from her son, the $350.00 rental income from the rental property, the $240.00 income from appellee's pension and $1,500.00 in investment income to appellant. We discussed the $381.00 loan repayment and $350.00 rental income above. As to the income received by appellant from her husband's pension, appellant alleges that her share of the pension will only amount to $91.00, rather than $240.00 as found by the trial court. Appellant offers no suggestion as to how she arrives at this figure. However, appellant testified at the hearing that the $240.00 was the amount she received before taxes were removed. *See* Hearing Transcript, 6/8/89, at p. 172. Based on appellant's testimony, and in the absence of further explanation by appellant, we find no error in the trial court's attribution of this income to appellant.

With regard to the investment income of $1,500.00, we note that appellant testified that she received this income. *See* Hearing Transcript, 6/8/89, at p. 172. If this income had been exhausted as appellant now claims, then it was incumbent upon her to bring this to the attention of the trial court. Consequently, we find no error in the trial court's attribution of this income to appellant.

■ The next issue raised by appellant concerns the trial court's findings with respect to the $30,000.00 placed in certificates of deposit. Appellant believes that the doctrine of laches should preclude appellee from claiming an interest to these funds. We agree.

At the hearing, appellee testified that a certificate of deposit in the amount of $10,000.00 was placed in the name of each of the parties' children as well as the names of the parties. *See* Hearing Transcript, 7/6/89, at pp. 6–7. Appellee averred that this was done for tax purposes and that the funds were supplied through his and appellant's earnings and/or savings. *See id.*, at pp. 6–7. Appellee further stated that when the parties' eldest child attained the age of

majority, the certificate in his name was transferred into the remaining certificates. *See id.*, at p. 7. As a result, the younger children's certificates were increased by the sum of $5,000.00 each, bringing the value of the certificates to $15,000.00 apiece.

In 1968, appellant requested that appellee sign a bank card for the alleged purpose of adding their son, William, to the accounts. *See id.*, at p. 8. By signing the bank card, however, appellee caused his name to be removed from the accounts. *See id.*, at p. 8. Several months later, appellant informed appellee as to the true effect of his signature, and further told appellee that neither he nor appellant could exercise any control over the accounts. *See id.*, at pp. 8–9. The record indicates that the funds were withdrawn by the parties' sons during the years 1970 through 1973.[8] Although appellee subsequently learned that the funds had been withdrawn, appellee admitted that he never made a claim to these funds. *See id.*, at p. 52.

As discussed above, laches will bar a claim where a plaintiff's failure to pursue his rights with due diligence works to the prejudice of another. *See Doppler, supra.* In this case, appellee admitted that in 1968, his wife informed him of the true consequences of his signing the bank card. However, appellee never attempted to have the transfer of the funds rescinded, nor did appellee make any type of claim to the funds until his inventory and appraisement was filed in 1986. Thus, appellee has permitted an extraordinarily long time to pass before asserting his interest in the funds. In addition, the checks contained in the record indicate that the funds were withdrawn by appellee's sons, Gary and William, over thirteen years before appellee made any claim to the funds. To now hold appellant accountable for funds which the parties' children received and utilized after such a long period of time would be prejudicial to

**8.** Although Elsie Downey's signature appears on the bank checks, the checks were not made payable to her nor were the certificates of deposit in her name. Thus, her signature was unnecessary since the designated payees were the parties' children and the children endorsed the checks.

appellant. Accordingly, we find that the doctrine of laches prevents appellee from claiming the certificates of deposit to be marital property.

■ Appellant's penultimate issue raises a question as to whether the trial court violated appellant's rights under the Equal Rights Amendment to the Pennsylvania Constitution, Article I, § 28. After thoroughly reviewing the hearing transcripts, we find that the record is devoid of any evidence as to the trial court's bias in favor of appellee and against appellant. We therefore conclude that appellant's claims of discrimination on the basis of gender are specious.

■ The final issue raised by appellant concerns appellant's claim to counsel fees. During the hearing, the trial court requested the parties to enter into a stipulation concerning the amount of time counsel spent on matters which appellant's counsel believed to have been unnecessary. *See* Hearing Transcript, 6/8/89, at pp. 220–221. Appellant's counsel then informed the court that a hearing would be necessary because of the conduct of appellee's counsel during the discovery phase of the proceedings. *See id.*, at p. 221. The trial court then stated that it would appoint a master to conduct a hearing on appellant's claim for counsel fees. *See id.* In reliance upon the trial court's decision, appellant's counsel declined to present further testimony on . the subject. In its opinion, however, the trial court apparently forgot its discussion with counsel and concluded that the parties should pay their own counsel fees. We believe the trial court's finding was erroneous, in view of the discussion at the hearing concerning appellee's conduct, which if proven, could possibly support an award of counsel fees. In view of the fact that this matter must be remanded to the trial court for a redetermination of appellee's share of the marital property, we direct the trial court to take additional testimony on this matter, and determine whether an award of counsel fees to appellant is appropriate.

In conclusion, we hold that there was insufficient evidence to support appellant's claim that her rights under the Equal Rights Amendment to the Pennsylvania Constitution were violated by the trial court. Further, we affirm the trial court's findings with respect to appellant's sources of income from appellee's pension, the loan repayment by her son, the rental income, and the investment income. We also find no error in the trial court's consideration of the effect of its order on appellant. As a result, we affirm the order with respect to these matters. Finally, we affirm the trial court's use of the 1989 valuation date and findings as to the fair market value of the property.

In view of our finding that appellee's claim to the certificates of deposit is precluded by the doctrine of laches, we find it necessary to reverse the trial court's award of 60% of the marital property to appellee because the trial court improperly considered appellant's control of these funds in awarding appellee his share. In addition, we find that the trial court erred in finding that appellant lived in the marital property rent-free, without taking into account the specific contributions made by appellant in acquiring and maintaining the property. Finally, because the trial court assured counsel that further testimony would be heard with regard to appellant's claims for counsel fees, we hold that it was error for the trial court not to conduct such a hearing, since there was some evidence which could support such an award, if sufficiently proven by appellant. Accordingly, we reverse that part of the trial court's order which awards 60% of the marital property to appellee and which denies appellant's claim for counsel fees.

Order affirmed in part and reversed in part. Remanded for further proceedings which are consistent with the above discussion. Jurisdiction relinquished.