679 A.2d 1266

**Peggy Harriet CADE, Appellant,**

v.

**Brian Samuel McDANEL and Forrest McDanel, t/d/b/a McDanel Painting, Appellees.**

Superior Court of Pennsylvania.

Argued April 10, 1996.

Filed June 12, 1996.

Reargument Denied Aug. 22, 1996.

James J. Loll, Beaver, for appellant.

Michael B. Jones, Beaver, for appellees.

Before DEL SOLE, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This is an appeal from an order of the Court of Common Pleas of Beaver County granting summary judgment in favor of Brian S. McDanel and Forrest McDanel, t/d/b/a/ McDanel Painting, in an action for personal injuries sustained by appellant. The lower court's order was based on its belief that there was insufficient evidence to enable the fact finder to infer that Brian S. McDanel's conduct was the proximate cause of appellant's injuries. On appeal, appellant contends that the lower court erred in granting summary judgment in favor of the appellees.

Specifically, appellant contends the following: 1) The lower court erred as a matter of law in concluding that she failed to present sufficient evidence to enable the fact finder to infer reasonably that Brian S. McDanel's conduct was the cause of her injuries; and 2) The lower court erred as a matter of law in concluding that she failed to present sufficient evidence to support the existence of a master-servant relationship necessary for a finding of vicarious liability. After a careful review of the record, the parties' briefs and the applicable law, we reverse the lower court's order of summary judgment in regard to the issue of causation and remand for proceedings consistent with this opinion. However, we affirm the lower

court's order of summary judgment in regard to the issue of vicarious liability.

At the outset of our analysis, we must address the appellees' motion to dismiss this appeal. The appellees argue that we should dismiss appellant's appeal because numerous deficiencies exist substantially hampering our ability to address effectively the merits on appeal. Specifically, the appellees assert that appellant's appeal should be dismissed for the following reasons: 1) Appellant failed to provide this Court with the original, certified transcripts of the depositions taken by her and the appellees; and, 2) Appellant failed to file a designation of the parts of the reproduced record which she intended to present on appeal. We find the appellees' arguments to be meritless, and, accordingly, we deny their motion to dismiss.

We agree with the appellees' assertions that it is appellant's responsibility to supply this Court with a complete record for purposes of review. Pa.R.A.P. 1911(a); Pa.R.A.P. 1921; *Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993). "[A] failure by ... appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue[s] sought to be examined." *Smith*, 637 A.2d at 623–624. This includes supplying this Court with the official transcripts of deposition testimony. *See Smith, supra.*

A close inspection of the original, certified record in this case discloses that appellant did, in fact, provide this court with the deposition testimony of herself, appellee Brian S. McDanel and Irene Mae Cade. The certified record also includes the affidavits of Sharon L. Whitmore and appellee Forrest McDanel. Clearly, the appellees' contentions to the contrary are incorrect. Accordingly, we find that appellant has fulfilled her obligation under Pa.R.A.P. 1911(a) and 1921, and has provided this Court with a complete, original record sufficient for appellate review.

The appellees also assert that this appeal should be dismissed because appellant failed to file a designation of the parts of the reproduced record which she intended to present

on appeal. The appellees allege that appellant's failure to serve them with a copy of the designated reproduced record pursuant to Pa.R.A.P. 2154(a) prevented them from having notice as to the parts of the record upon which appellant relied, and, consequently, they were prejudiced. We find this argument also to be meritless.

In *Helms v. Boyle*, 431 Pa.Super. 606, 637 A.2d 630 (1994), we held that an appellant's failure to serve a timely designation of the reproduced record did not warrant dismissal where the appellees failed to demonstrate that they were prejudiced by the procedural defect. Likewise, in *Downey v. Downey*, 399 Pa.Super. 437, 582 A.2d 674 (1990), we refused to dismiss an appeal because of appellant's failure to serve the appellees with a copy of the designated reproduced record. In *Downey*, we noted that "Pa.R.A.P. 2156 expressly permits ... appellee[s] to file ... [their] own supplemental reproduced record with the court when the parties are unable to cooperate on the preparation of the reproduced record." *Id.*, 582 A.2d at 678. We then further noted that upon realizing that appellant had failed to include a copy of the entire hearing transcript in the reproduced record, the appellees failure to file a supplemental record did not warrant dismissal of the appeal.

Here, once it became apparent to the appellees that the entire transcript was not contained in the reproduced record, the appellees supplemented the record by the addition of the deposition testimony transcripts and other material which they deemed to be relevant. Also, we received a brief from the appellees, and all of the material submitted in the appellees' supplemental reproduced record was contained in the certified record. Accordingly, we fail to see how the appellees were prejudiced by appellant's failure to serve a designation of the reproduced record which she intended to file.

As for the appellees' contention that they incurred substantial costs in filing a supplemental reproduced record and that appellant should be required to reimburse them for their expense, we again note that the certified record contained all of the materials found in the appellees' supplemental

reproduced record. *See* Pa.R.A.P. 2154(a) ("In designating parts of the record for reproduction, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination and shall not engage in unnecessary designation."). In addition, pursuant to Pa. R.A.P. 2156, appellees are required to incur the costs necessary to "prepare, serve and file a supplemental reproduced record." Accordingly, we find this argument to be meritless.

Having concluded that the appellees' motion to dismiss is meritless, we shall address the issues raised by appellant.

■■■ Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224, 225 (1994), *alloc. denied,* 539 Pa. 638, 650 A.2d 52 (1994). We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Chrysler Credit Corp. v. Smith,* 434 Pa.Super. 429, 643 A.2d 1098, 1100 (1994). We will only reverse the lower court's grant of summary judgment if there is a manifest abuse of discretion. *Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 644 A.2d 1251 (1994). An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 625 A.2d 1181, 1185 (1993). Summary judgment should be granted "only in cases where the right is clear and free of doubt." *Chrysler Credit Corp.,* 643 A.2d at 1100 (citation omitted). "Summary judgment serves to eliminate the waste of time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Liles v. Balmer,* 389 Pa.Super. 451, 567 A.2d 691, 692 (1989). In addition, pursuant to Pennsylvania Rule of Civil Procedure 1035(b), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

Viewing the record in the light most favorable to appellant, the non-moving party, the record reveals the following pertinent facts: Prior to October 24, 1993, appellant and appellee Brian S. McDanel had been dating for a short period of time. On October 24, 1993, the couple attended a party at a friend's house. Brian drove the couple to the party in his father's 1993 Chevrolet S–10 pickup truck.[1] While at the party, Brian consumed two mixed drinks and a few beers. The couple left the party around midnight, and Brian began to drive appellant home.

On their way home from the party, appellant repeatedly requested that Brian stop the truck because he was driving too fast. When he failed to do so, she grabbed the gearshift and the truck came to an immediate stop. This angered Brian. While the truck was stopped, he exited it to relieve himself. When Brian returned to the truck, he discovered that appellant had removed the keys from the ignition. Brian demanded that she return the keys to him. When appellant refused to do so, Brian struggled with her and was finally able to retrieve the keys.

Brian then started the truck and continued to drive appellant home. Appellant again requested that Brian "slow down." He did not respond. At this point, appellant was seated straight forward in the passenger's seat with her window in a cracked position. Approximately half an hour later, appellant was ejected from the moving truck from the passenger's side.

Shortly after appellant's ejection from the truck, the police arrived on the scene. The police observed Brian staggering and acting in a belligerent manner. When questioned about the incident, Brian indicated that he was unsure as to how appellant was ejected from the vehicle. After failing a field sobriety test, Brian was arrested on the scene for driving

1. Brian's father, Forrest McDanel, was the owner of the truck involved in this incident. Forrest McDanel also trades and does business as McDanel Painting.

while under the influence of alcohol. He later pleaded guilty to the charge.

Immediately after the incident, appellant was admitted to Harmarville Hospital where she remained in a coma for eleven days. As a result of her injuries, appellant suffered amnesia. However, in regard to the accident, appellant is certain that she did not voluntarily jump from the truck. In addition, in deposition, appellant clearly testified that prior to falling out of the truck she felt a force against a part of her body. Appellant testified that this force felt "like somebody was pushing ... [her] out [of the truck]." Appellant also testified that just prior to her ejection, the truck had swerved dangerously causing her heavy purse to push against her body.

In deposition, Brian testified that appellant opened the truck's door and voluntarily jumped from the moving vehicle. He further testified that appellant gave no warning that she was going to jump. Brian also testified that prior to appellant jumping out of the truck, he informed her to "shut that fucking door."

Appellant filed an action in negligence to recover damages sustained when she fell out of the truck. The appellees filed a motion for summary judgment. The lower court held oral argument on the motion, and, subsequently, granted the appellees' motion for summary judgment, thereby determining that appellant failed to demonstrate that Brian was the proximate cause of her injuries or that his father, Forrest McDanel, was vicariously liable for his son's actions. This appeal followed.

 In this case, there is no dispute that appellant fell from the truck driven by Brian or that she sustained personal injuries as a result thereof. However, the appellees claim that there is no genuine issue for trial because the evidence produced by appellant is not sufficient to demonstrate that Brian's conduct *caused* appellant's fall.[2] On the other hand, appellant argues that there is sufficient circumstantial evi-

2. The four elements necessary to establish a cause of action in negligence are: "a duty or obligation recognized by law; breach of that duty by the defendant; causal connection between the defendant's breach of

dence from which a jury could infer reasonably that Brian's conduct caused her injuries. Having reviewed the depositions presented by appellant in response to the appellees' summary judgment motion, we agree with appellant that she has raised a genuine issue of material fact regarding causation, and, accordingly, we find that summary judgment was improperly granted.

In arguing that she presented sufficient circumstantial evidence to infer that Brian's conduct caused her injuries, appellant relies on the historic decision in *Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 153 A.2d 477 (1959), in which our supreme court stated the following:

> It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability ... The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict [s]he seeks. The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way. A substantial part of the right to trial by jury is taken away when judges withdraw close cases from the jury. Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deductible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith.

*Smith*, 153 A.2d at 480.

In rejecting appellant's argument that there was sufficient circumstantial evidence from which it could be inferred that

---

that duty and the resulting injury; and actual loss or damage suffered by the complainant." *Reilly v. Tiergarten, Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 210 (1993) (citation omitted).

Brian's conduct caused her injuries, the lower court also relied on *Smith* in which our supreme court espoused the equally well-settled rule that "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but ... there must be evidence upon which logically its conclusion may be based." *Smith,* 153 A.2d at 479.

Although admittedly this is a close case, we conclude that appellant's evidence met the *Smith* test for circumstantial proof. Without resort to conjecture, the jury would have had a rational basis to choose, over any other inference suggested by the evidence, the inference that Brian's conduct caused appellant's injuries.

A review of the record reflects that Brian was the driver of the vehicle from which appellant was ejected on October 24, 1993. The record further reveals that Brian was driving the vehicle while under the influence of alcohol, and, in fact, had a blood alcohol level of .108%. Appellant testified that during the drive home, she repeatedly asked Brian to "slow down" and that on one occasion she grabbed the gearshift, causing the truck to immediately stop, because he was speeding. She further testified that she removed the keys from the vehicle but that during a struggle Brian was able to regain control of the keys and continued the drive home. Appellant then testified that during the drive she remembered the truck "swerving dangerously," that she felt a force against a part of her body and that she was then ejected from the truck. While appellant testified that the incident occurred rather quickly, she was certain that she did not jump from the truck. Rather, she testified that Brian either pushed her out of the truck or that she fell out as a result of his negligent driving. In depositions, the following exchange occurred between appellant and the appellees' attorney:

Q: Do you have any remembrance or recollection of ... [falling out of the truck?] I want to know if you, without consulting anyone else or reading anything else, have any independent recollection or remembrance of what occurred?

A: I remember falling. I didn't jump. I know I didn't jump. I was either pushed or ejected out of the car.

Q: Do you have any specific remembrance or recollection of being pushed out of the car?

A: Well, I know there was a force. It was either being pushed or just being, you know, thrown from the car.

Q: How do you know that there was a force or that you were being thrown from the car?

A: Because I felt a force before I had fallen.

Q: Can you describe this force to me? Can you tell me what it felt like?

A: Like somebody was pushing me out.

N.T. 1/6/95 p. 47.

■ Appellant's evidence, if believed, reasonably suggested that she was either pushed out of the truck by Brian or that his negligent driving caused her to be ejected from the truck. For those who may argue that there was room for impermissible speculation as between appellant's two theories of causation, we emphasize that in avoiding summary judgment appellant "need not negate all other possible causes of an occurrence, ... or prove with mathematical certainty, to the exclusion of other possibilities, that an occurrence could only have been caused in one manner consistent with ... [the appellees'] liability." *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 466 (1984) (citations omitted).

Moreover, we note that even if the jury were to believe the appellees' contention that appellant jumped from the truck, it does not preclude a finding of liability on behalf of Brian. From the circumstantial evidence presented, the jury could infer that appellant, who was in the custody of a criminal (drunken driving), jumped from the moving truck out of fear produced by the criminal's actions, and, therefore, did not "voluntarily" jump from the moving truck.

Taken as a whole, we find that appellant presented sufficient evidence to create a jury question on causation, and, consequently, the lower court erred in granting summary judgment in favor of the appellees on this particular issue.

██ Appellant's next contention is that the lower court erred as a matter of law in concluding that she failed to present sufficient evidence to support the existence of a master-servant relationship between Brian and his father, t/d/b/a/ McDanel Painting, necessary for a finding of vicarious liability. We disagree.

██ "Ordinarily, the question of the existence of a ... master-servant relationship is one of fact for the jury to determine.... However, where the facts giving rise to the relationship are not in dispute, 'the question of the relationship between the parties is one which is properly determined by the court.'" *Breslin By Breslin v. Ridarelli*, 308 Pa.Super. 179, 454 A.2d 80, 82 (1982) (citations omitted).

██ Here, there is no genuine issue of material fact regarding the evidence submitted concerning the facts giving rise to the relationship at issue.[3] The uncontradicted evidence of record indicates the following: Forrest McDanel and his

3. In her brief, appellant asserts that there is a genuine issue of material fact regarding whether the truck driven by Brian was a commercial or non-commercial vehicle. Appellant further asserts that she believes that the truck was titled in the name of McDanel Painting, and, therefore, the truck was a commercial vehicle, entitling her to the presumption that the operation of the truck was for the owner's purposes. *See Waters v. New Amsterdam Casualty Company*, 393 Pa. 247, 144 A.2d 354 (1958). Our thorough review of the certified record indicates that there is no evidence in the record supporting appellant's assertion that the truck at issue was a commercial vehicle. Appellant's bald assertion in her brief claiming that the truck was titled in the name of McDanel Painting is not a fact of record which can support her position. *Adoption of M.S.*, 445 Pa.Super. 177, 664 A.2d 1370 (1995) (for purposes of appellate review, what is not of record does not exist). The uncontradicted evidence indicates that Forrest McDanel and his wife, Jacquelyn, are named as the sole owners of the truck. There is no evidence supporting appellant's allegation that the truck was titled in the name of McDanel Painting, or any other indication in the record that the truck was a commercial vehicle. Because there is no evidence in the official record that the truck was a commercial vehicle, there is no genuine issue of material fact regarding the status of the vehicle. Consequently, appellant's claim that the truck was a commercial vehicle, and, thus, she is entitled to the presumption that the operation of the truck was for the owner's purposes must fail. *See Waters, supra* (holding that in Pennsylvania there is a rule that proof of the ownership of a business vehicle involved in an accident raises a presumption that the operation of the automobile was for the owner's business purposes).

wife, Jacquelyn, were the sole owners of the non-commercial 1993 Chevrolet S–10 pickup truck which their son, Brian, was driving on the early morning of October 24, 1993.[4] Brian was informed that he could use the truck whenever it was necessary, and that he had express permission to use the truck during the time at issue. On October 24, 1993, Brian was using the truck for the personal purpose of attending a friend's party. He was not using the truck for purposes relative to McDanel Painting, nor was he using the truck on behalf of his mother or father.

Having found no genuine issue of material fact regarding the relationship at issue, we must determine whether the lower court erred as a matter of law in finding that there was no master-servant relationship between Brian and his father, the appellee/owner of the truck. In *Breslin, supra,* we addressed an issue similar to the one presented in the case at bar.

▬ In *Breslin,* we examined the relationship between a husband/owner and a wife/operator of a vehicle. In that case, we noted the following:

> The family use doctrine is not a part of the law in Pennsylvania. The mere fact of the spousal relationship is insufficient to impose liability upon the husband-owner for the wife-driver's negligence, if any. Similarly, the mere fact that the husband-owner has given permission to his wife to use the vehicle is insufficient to establish an agency or master-servant relationship. To establish liability against an absent owner, it must be shown not only that the driver was the owner's servant but also that such servant was at the time engaged in the master's business so as to be subject to the master's control or right of control. Vicarious liability will be imposed in situations involving non-commercial vehicles only where the master possessed the right to control the servant's acts. If a particular agent is not a servant, the principal is not considered a master who may

4. Although Forrest McDanel and his wife, Jacquelyn, are co-owners of the truck their son, Brian, was driving on October 24, 1993, appellant did not name Jacquelyn as a defendant in this matter.

be held vicariously liable for the negligent acts of the agent. A servant is an agent whose *physical conduct* in the performance of the service is *controlled* or *is subject to the right of control* by the master; that is, a master controls not only the *results* of the work, but the *manner* in which the work is to be performed. To impute negligence, the party so contending must show that the driver was under the control of the owner as fully as if the driver were a paid servant. Negligence will not be imputed to the husband of a motorist where the uncontradicted evidence is that the motorist was on a mission of her own and that her husband had not ordered or requested her to do anything for him.

*Breslin,* 454 A.2d at 82–83 (emphasis in original) (citations omitted).

While we acknowledge that the relationship at issue in *Breslin* was that of a husband/owner and a wife/operator, it is reasonable to conclude that our holding is to be extended to a father/owner and a child/operator relationship. Keeping this rule of law in mind, we now turn to the issue of whether a master-servant relationship existed between Forrest and his son, Brian, when Brian was driving his father's truck during the morning hours of October 24, 1993.

The record clearly establishes that Brian used his father's vehicle for purely personal reasons. Brian's deposition discloses unequivocally that he used his father's truck to transport him and his date, appellant, to a friend's party. Forrest was not present in the truck at the time of the incident, and there was no indication whatsoever of any right of the owner to control the operation of his vehicle. It is also uncontradicted that Forrest did not request or order his son to do anything for him during the time at issue. Rather, Brian was on a mission of his own. Moreover, the mere fact that Brian was driving the vehicle with his father's permission, without more, was insufficient to establish a master-servant relationship. *Breslin, supra.* There is a long line of cases establishing that "in cases not involving business automobiles, ... it is necessary for ... [appellant] to prove not only that the driver was the servant, but that such servant was at the time

engaged in the master's business." *Breslin,* 454 A.2d at 83 (citations omitted). Here, there is no evidence that Brian was engaged in his father's business at the time of appellant's injuries. Consequently, we find that Brian's use of his father's car was insufficient to establish a master-servant relationship and was insufficient to impose vicarious liability upon Forrest for the alleged torts of his son. Accordingly, we find that the lower court did not err in awarding summary judgment in favor of the appellees on this issue.

Considering all of the evidence in the light most favorable to the appellant, we find that the lower court erred in concluding that she failed to present sufficient evidence to enable the fact finder to infer reasonably that Brian's conduct was the cause of her injuries, and, therefore, the lower court erred in granting summary judgment in favor of the appellees on the issue of causation. Accordingly, we reverse that part of the court's order entering summary judgment on this particular issue, and remand for proceedings consistent with this opinion. However, we further find that the lower court did not err in concluding that as a matter of law appellant failed to present sufficient evidence to support the existence of a master-servant relationship between Forrest and his son, Brian, and, therefore, the lower court did not err in granting summary judgment in favor of the appellees on the issue of vicarious liability. Accordingly, we affirm that part of the court's order entering summary judgment on this particular issue.

Order entering summary judgment reversed and remanded in part; affirmed in part; motion to dismiss denied; jurisdiction relinquished.