698 So.2d 63 (1997)
Kim Glazer GOLDBERG
v.
Arnold Martin GOLDBERG.
No. 96-CA-2145.
Court of Appeal of Louisiana, Fourth Circuit.
July 23, 1997.
*64 W. Patrick Klotz, Collins, Klotz & Roeder, L.L.P., New Orleans, and Kern Reese and Robert G. Harvey, New Orleans, for Appellant.
Steven J. Lane, Maury A. Herman, Herman, Herman, Katz & Cotlar, New Orleans, for Appellant.
Before LOBRANO, ARMSTRONG and MURRAY, JJ.
LOBRANO, Judge.
In this domestic litigation, both parties appeal the trial court judgment of December 6,1995, as amended on March 29,1996. The cumulative effect of both decrees is as follows:
1) Kim Goldberg was ordered to pay Arnold Goldberg alimony pendente lite in the amount of $3,975.00 per month. Her request for alimony pendente lite was denied.
2) Arnold Goldberg was ordered to pay child support in the amount of $669.79 per month, retroactive to the date of filing, subject to reevaluation within six months of December 6,1995.
3) Kim Goldberg was ordered to pay the past due maintenance bills on two New York apartments owned by the community, subject to reimbursement when the community is partitioned.
Arnold Goldberg (Arnold) appeals those portions of the judgment awarding him alimony pendente lite, arguing it is too low, and *65 the child support award, which he complains is too high. Kim Goldberg (Kim) appeals complaining that she should not have to pay alimony pendente lite, nor the maintenance costs of the New York apartments. In addition, she also argues the child support award is too low and that the court erred in not granting her alimony pendente lite.

FACTS AND PROCEDURAL HISTORY:
Kim Glazer and Arnold Goldberg were married on June 23, 1984. On June 6, 1995 Kim filed a petition for divorce. Shortly thereafter (approximately two weeks) Arnold was terminated from his position as Chief Operating Officer of Glazer Steel Corporation, a business owned by Kim's family. The evidence indicates Arnold earned approximately $160,000.00 in 1992, 1993 and 1994. As of the date these matters were heard, Arnold was unemployed.[1]
Kim and Arnold moved to New Orleans in 1988. Shortly thereafter Arnold was employed by Glazer Steel and eventually moved into the position he occupied at the time of his termination. Kim's mother and father passed away in 1991 and the record indicates that by 1993 she had inherited between one and two million dollars. Prior to their separation, the evidence shows that the parties relied on Arnold's salary as their principal means of support.[2]
In reasons for judgment, the trial judge concluded that Arnold was terminated from his employ under questionable circumstances and thus should not be required to pay alimony pendente lite. The court also reasoned that even though the peculiar circumstances of his employment termination did not render him "voluntarily unemployed," he was in fact employable. For that reason, she ordered him to pay child support. The court found Arnold's annual earning capacity to be $32,500.00, it disallowed certain expense items he claimed and then awarded him alimony pendente lite in the amount of $3,975.00 per month. Finally, the court concluded that Kim was in a better financial position than Arnold to preserve the community apartments in New York.

ALIMONY PENDENTE LITE AWARD:
Arnold argues the award is too low and Kim argues it was error to deny her request for alimony pendente lite.
Arnold predicates his argument on both legal and factual errors. First he claims it was legal error for the court to consider his earning capacity when setting alimony pendente lite. Second, he claims that, even if his earning capacity is considered, it wasn't proved. Finally, he argues factual error in the disallowance of several of his expense items.
Kim argues that Arnold was always the principal wage earner and thus should pay her support.

a) Legal Argument:

In Gravois v. Gravois, 495 So.2d 315 (La. App. 4th Cir.1986), this court recognized the split in the circuits with respect to the use of earning capacity in determining alimony pendente lite. We adopted the approach taken by the First Circuit in Whipple v. Whipple, 424 So.2d 263 (La.App. 1st Cir.1982) and concluded that the Court may consider earning capacity in determining alimony pendente lite. This conclusion was premised on the great discretion afforded the trial court under Civil Code article 111 (formerly 148) which provides that "the judge may allow" support pending suit for divorce.
Subsequently, in Lindner v. Lindner, 506 So.2d 609 (La.App. 4th Cir.1987), we followed Gravois' reasoning and held that the trial court properly considered the claimant spouse's earning capacity in reducing her award after a period of ninety days. We reasoned that the claimant spouse had professional training which would enable her to earn approximately $25,000.00 per year, and thus permitted her 90 days of "enhanced" support in order to seek employment. The Supreme Court, however, granted writs and *66 reversed. Lindner v. Lindner, 508 So.2d 57 (La.1987). In a very abbreviated opinion the court merely stated:
The judgment of the court of Appeal is reversed and the judgment of the trial court is amended to delete the reduction of alimony pendente lite; the award of $2,231.00 per month shall continue until final divorce. See, C.C. arts. 148 and 160.
Arnold argues the Supreme Court's ruling in Lindner rejected our conclusion that earning capacity should be a factor. Arnold bolsters this argument by pointing out that Article 111 (formerly 148), providing for alimony pendente lite, makes no mention of earning capacity, while article 112 (formerly 160), providing for permanent alimony, makes specific mention of earning capacity. That is the reason, says Arnold, for the court's reference to articles 148(111) and 160(112) in its opinion. He refers us to Arrendell v. Arrendell, 390 So.2d 927 (La. App. 2nd Cir.1980) which noted that distinction between the two articles.
The Lindner opinion is easily subject to different interpretations. In addition to Arnold's position, Lindner has been cited for its disapproval of the imposition of a time limit for an award of alimony pendent lite. Martin v. Martin, 573 So.2d 620 (La.App. 2nd Cir.1991). In Els v. Els, 538 So.2d 1098 (La.App. 5th Cir.1989), the Fifth Circuit relied on both Lindner and Gravois in approving consideration by the trial court of the claimant spouse's immediate employment history, rather than simply her employability.
Subsequent to Linder, this court continued to cite Gravois with approval. Fairchild v. Fairchild, 537 So.2d 1260 (La.App. 4th Cir.1989). In the absence of further pronouncements by the Supreme Court on this issue, we cannot say the Gravois approach is unreasonable or that Lindner rejected it. The vast discretion afforded a trial court in setting alimony pendente lite, by necessity, requires consideration of numerous factors, including the claimant spouse's immediate employment history and capacity for self support. It would be unreasonable to say, as a matter of law, that those two factors should be ignored since they are an integral part of the "maintenance requirements versus available means" debate of pendente lite support claims. Accordingly, we will not exclude, as a matter of law, earning capacity as a factor for consideration.

b) Factual Arguments:

Arnold argues that the trial court's factual conclusions are manifestly erroneous in that the evidence fails to support an earning capacity between $25,000.00 and $40,000.00, and that the disallowance of certain of his claimed monthly expenses was unjustified. Kim argues that the court was clearly wrong in not awarding her alimony pendente lite because throughout their marriage Arnold was the wage earner and she was the homemaker. She complains that it is patently unfair to require use of her inheritance to support Arnold and their children.
If a spouse has not sufficient income for maintenance pending a suit for divorce, the court may allow a sum for support proportioned to the needs of the claimant spouse and the means of the other spouse. La. C.C. art. 111. Courts have recognized that alimony pendente lite is designed to maintain the economic status quo of marriage. Brazan v. Brazan, 93-2369 (La. App. 1st Cir. 6/24/94), 638 So.2d 1176. The amount of alimony pendente lite is left largely within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of that discretion. Brazan, supra. In essence, the ultimate decision requires a balancing of the needs of the claimant spouse against the means of the payor spouse. The balancing task requires consideration of numerous factors. However, of principal concern are the facts "as they existed during the time the parties were living together and as they actually exist at the time the litigation commences, not to future possibilities and capabilities." Brazan, supra at 1181.
This case does not present the typical factual scenario. The trial judge correctly recognized the unusual circumstances involved in this litigation. It is undisputed that prior to their separation, Arnold was the wage earner of the family making approximately $160,000.00 per year as an executive with *67 Glazer Steel, a business owned by his wife's family. During the two years previous to their separation, Kim inherited well in excess of $1,000,000.00 upon the death of her parents. However, Arnold's salary provided the vast majority of support (almost 90%) for the family who admittedly lived a very opulent lifestyle. Income from Kim's inheritance was invested.
Immediately upon separation, Arnold was terminated from his employ with Glazer Steel. Arguments by both parties suggest different reasons for his discharge. Suffice it to say that we find justified the trial court's comments that "Mr. Goldberg was fired from his job through questionable circumstances, and should not be ordered to pay alimony pendente lite to Ms. Goldberg, providing her with a better lifestyle than him." However, we also find support for the court's recognition of Arnold's ability to earn between $25,000.00 to $40,000.00, even though Arnold argues otherwise. Against this background, we address the specifics of each argument.
First, it is certainly a reasonable conclusion that Arnold, a former executive in a major business previously earning $160,000.00 per year, would have an earning capability of at least $25,000.00 per year. The trial court used an average of $32,500.00 and relied on the expert testimony of Judith Lide in doing so. Arnold's argument is that her analysis is based on salesman jobs which he complains he is unsuited for and should not be forced to seek. We find no merit in this argument simply because Arnold's overall capacity to earn is the crucial factor, not a specific job classification he may be dissatisfied with. Considering his employment and educational background, a determination that he has an earning capacity of $32,500.00 is certainly not clearly wrong.
Second, the trial court disallowed certain expense items which Arnold claims was an abuse of discretion. We find no error in those determinations. Arnold claimed monthly expenses of approximately $16,000.00. The court properly disallowed $6,170.00 for maintenance of two New York apartments which the parties owned since Kim was ordered to pay those expenses. We find no compelling reason to disturb the other items disallowed by the trial court.[3] Despite Arnold's specific complaints about each, the record supports the trial court's conclusion.
Arnold repeatedly argues in brief that his "award" was improperly reduced by his earning capacity and the disallowance of various expense items. We emphasize that there was no "reduction of an award." The awards were set by the Court after consideration of those items. Our observation may appear to be one of semantics, but it goes to the heart of the issue. We are satisfied that, after considering all the relevant factors, the trial court reached a conclusion which we cannot say is clearly wrong.
Kim argues she is entitled to alimony pendente lite because her husband was always the wage earner and that she was never employed. In the normal setting that would be a valid argument. However, the unusual circumstances of this case undermine the basis of that argument. The legal system simply cannot place these parties in the same economic position they occupied prior to their separation since the husband is no longer earning $160,000.00 per year. Kim cannot complain about lack of support from Arnold and at the same time complain that her inheritance is being depleted in order to maintain their previous lifestyle. This Court can cite every case ever written about alimony pendente lite and still not return both parties to their former economic status.
The "means" of article 111 includes, not only income, "but also [income] on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined." Brazan v. Brazan, supra at 1180. Kim's inheritance, in excess of $1,000,000.00, was properly considered by the court in its determination of Arnold's claim for alimony pendente lite. Similarly, her inheritance supports the court's rejection of her *68 claim for alimony pendente lite. Article 111 conditions an alimony award on "if the spouse has not sufficient income for maintenance pending suit for divorce." Certainly Kim's inheritance negates that condition.

CHILD SUPPORT:
The court ordered Arnold to pay child support in the amount of $669.79 per month. The judgment also provides that the award will be reevaluated within six months of December 6, 1995. Arnold argues the award is not in accordance with the guidelines of La. R.S. 9:315.1, et. seq. and that, because he was found to be in need of alimony pendente lite, it is inconsistent to order him to pay child support. Kim argues the award is too low, that Arnold's previous income history and earning capacity warrant an increase, and that the past lifestyle of the children warrant a substantial increase.
Again, we observe that this case is unusual. During the marriage, the Goldberg's two children had a very high standard of living. The evidence indicates that the children's pro-rata share of the family's monthly expenses to be approximately $10,000.00. Of course, Arnold was earning $160,000.00 at the time. Both parties argue that application of the guidelines favor their position.
In its reasons for judgment, the trial court focused on whether Arnold was "voluntarily unemployed" within the meaning of La. R.S. 9:315.9. In reaching the conclusion that he was not, the court did find that he was employable and thus, presumably, relied on the figures of between $25,000.00 to $40,000.00 as the basis for the award. Considering the peculiar circumstances of this case, and the fact that the trial court ordered reevaluation in six months, we find no abuse of discretion.
Strict adherence to the child support guidelines in this case would be inappropriate. In pertinent part, La. R.S. 9:315.1(B), provides that "[t]he court may deviate from the guidelines ... if their application would not be in the best interest of the child or would be inequitable to the parties." Although the trial court did not specifically say "I deviate from the guidelines," the court's reasons certainly suggest that strict adherence would produce an inequitable result.
Arnold complains that he should not be required to pay any child support because he was in need of support for himself. We know of no rule of law which prohibits a child support award under these circumstances. Even though Arnold was unemployed at the time of the hearing, there was no error in the trial court's utilization of his earning potential. Arnold was seeking employment, albeit with no success at the time of trial. However, it is reasonable to conclude that within six months he would be earning at least $25,000.00 per year. Considering the needs of the children as they existed at the time the parties separated, we cannot say the trial court abused its discretion in awarding $669.79 in child support.
For the same reasons, we reject Kim's argument for an increase. Certainly, if Arnold was still employed at $160,000.00 per year an increase would be warranted. However, at the time of trial he was not. If the children are to be maintained in the extravagant lifestyle enjoyed prior to separation, the record convincingly shows that Arnold could not carry the entire burden at the time of the hearing. His salary from Glazer Steel is gone, and Kim's inheritance is the only source to maintain the children's status quo. Kim's own experts, Richard Kelley and Judith Lide, support the conclusion that the needs of the children are substantial and Arnold's employability/earning capacity are insufficient to meet those needs. Based on the record at the time of trial, if the children are to be maintained in their previous lifestyle, Kim will have to be the substantial provider. Of course, future circumstances will dictate if an increase in support is warranted.
Presumably the trial judge considered the equities of this unusual situation when she determined that Kim had the means to fund the greater portion of the child's maintenance, while at the same time not permitting Arnold to escape at least some responsibility. We simply cannot find any manifest error at the time that determination was made.

*69 MAINTENANCE OF NEW YORK APARTMENTS:

Finally, Kim argues that Arnold should be required to pay one-half of the maintenance and other charges on the apartments in New York owned by the parties. The trial court correctly acknowledged that "each spouse has a duty to preserve the community property regime" and then found Kim was in a better position (at that time) to maintain the property. We cannot say that decision is clearly wrong.
Civil Code article 98 provides that "[m]arried persons owe each other fidelity, support and assistance." However, if one spouse is unable to provide the assistance, the law does not permit the other spouse to cease assisting. Arnold is unemployed and Kim has substantial separate property. She will be reimbursed for the amounts she utilizes in preserving the community. Arnold will eventually pay his share of the expenses when the community regime is settled.
For the above and foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] The various rules were heard on October 25, November 2, and November 3, 1995.
[2] The income tax records introduced into evidence, as well as the summary of income prepared by Richard Kelley, CPA, support the conclusion that Arnold was the principal wage earner.
[3] The court disallowed $150.00 per month for entertainment, $500.00 per month for vacation, $1,000.00 per month for housekeeper, $1,000.00 per month for auto maintenance and $150.00 per month for an IRA for college education.