Beth A. HUMPHREYS, Appellee,

v.

William DeROSS, Appellant,

Superior Court of Pennsylvania.

Argued April 30, 1999.

Filed Aug. 18, 1999.

Stephen E. Hall, Meadville, for appellant.

Barbara J. Walton, Meadville, for appellee.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, JOHNSON, HUDOCK, EAKIN, JOYCE, MUSMANNO and ORIE MELVIN, JJ.

HUDOCK, J.:

¶ 1 In this appeal, we are asked to determine whether the trial court erred when it held that an inheritance received by William DeRoss (DeRoss) should be considered in the calculation of his income for child support purposes. The trial court's order directed DeRoss to pay $607.45 per month in child support for his minor daughter, Angela. The order also set arrearage payments at $84.55 per month, for a total payment of $692.00 per month. Angela, born March 3, 1981, lives with her adult sister, Beth A. Humphreys (Humphreys), the appellee herein. Because we conclude that the statutory definition of income properly includes DeRoss's inheritance under the circumstances of this case, we affirm.

¶ 2 DeRoss was the sole beneficiary of his mother's estate. Upon her death in August 1997, the estate sold DeRoss's mother's residence, realizing $83,696.65 from the sale, and this sum was subsequently distributed to DeRoss. DeRoss purchased a new home with this money, and also purchased other items for his current family's benefit. Thereafter, Humphreys petitioned the court for a modification of the existing support order based upon DeRoss's changed circumstances, i.e., the inheritance. Following a hearing on the modification petition, the hearing officer imputed to DeRoss an additional $4,525.00 a month in income based upon the money he received as his inheritance. The hearing officer determined this additional amount by amortizing the lump sum received from the sale of the house over the period from the date of the modification petition until Angela's eighteenth birthday. This appeal followed.

¶ 3 DeRoss raises two issues on appeal, namely:

I. Whether the Court below committed error in the holding that the entire amount of an inheritance received by Appellant is "income", as that term is defined under 23 Pa.C.S.A. § 4302, for purposes of determining [the] level of child support.

II. Whether the attachment issued pursuant to the support order entered herein was in excess of the mandatory amounts prescribed by the Consumer Credit Protection Act, 15 U.S.C.A. § 1601, et seq.

Brief for Appellant at 3.

¶ 4 "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese*, 452 Pa.Super. 497, 682 A.2d 393, 395 (1996), *appeal denied*, 547 Pa. 722, 689 A.2d 230 (1997). We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. *Id.* An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused. *Depp v. Holland*, 431 Pa.Super. 209, 636

A.2d 204, 205–06 (1994). *See also Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp*, 636 A.2d at 206.

¶ 5 In Pennsylvania, an award of child support is based upon the Child Support Guidelines promulgated by our Supreme Court. The guidelines were enacted to ensure "that persons similarly situated shall be treated similarly." 23 Pa.C.S.A. § 4322(a). When faced with a request for child support, a trial court utilizes the guidelines to determine the reasonable needs of the child and the ability of the obligor to provide support. *Id.* "In determining the . . . ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, *with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.*" *Id.* (emphasis added).

¶ 6 In considering this matter, we emphasize that our analysis must begin with the relevant statutory language contained in the Pennsylvania Domestic Relations Code. Although the term "income" may have a particularized meaning to an accountant who would treat it as wages or earnings from principal, we are not bound by such meanings. Rather, we must look to the statutory definition of the term; all reasoning must begin with that definition.

¶ 7 In the present case, "income" is defined in support actions as follows:

"**Income.**" Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.[1]

¶ 8 It is thus clear from a cursory reading of the definition that the term includes more than just earnings from

1. We note that the Pennsylvania Supreme Court has amended the Support Guidelines, effective April 1, 1999. The definition of monthly gross income contained in the guidelines is substantially similar to the definition contained in 23 Pa.C.S.A. section 4302. *See* Pa.R.C.P.1910.16–2(a). Pertinent to our discussion *infra*, we note that Rule 1910.16–2(a)(8) includes as monthly gross income "other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source." Moreover, the explanatory note following this subsection states that a trial court has the discretion to determine the most appropriate method for imputing lump-sum awards as income for support purposes, whether by annualizing the award or averaging it over a period of time, all depending upon the circumstances of the case. Thus, this note provides additional support for the trial court's actions in the present case. *See* Pa.R.C.P. 129(e) ("A note to a rule or an explanatory comment is not a part of the rule but may be used in construing the rule."). *See also Rieser v. Glukowsky*, 435 Pa.Super. 530, 646 A.2d 1221 (1994) (explaining that, while the explanatory notes following rules of procedure are not binding precedent, they may aid in interpreting the meaning of the rules).

principal or wages. This Court has held that the above examples of what constitute income are not intended to be an all-inclusive list. *Darby v. Darby*, 455 Pa.Super. 63, 686 A.2d 1346, 1348 (1996), *appeal denied*, 548 Pa. 670, 698 A.2d 594 (1997).[2] Rather, the list contains examples that may guide a court when determining what constitutes income. Moreover, when determining what is income under this section, we have stated that "actual earnings are not necessarily utilized; courts are required to determine ability to pay from all financial resources" of the parties. *Id. See also Calabrese*, 682 A.2d at 396 (stating that the definition of income in a support case must "reflect the actual available financial resources of the payor"). A court must consider every aspect of a parent's financial ability to pay child support, including that parent's property interests, stocks, and other investments. *Blaisure v. Blaisure*, 395 Pa.Super. 473, 577 A.2d 640, 642 (1990). *See also Babish v. Babish*, 361 Pa.Super. 118, 521 A.2d 955, 957 (1987) (stating that a court should recognize the "full nature and extent" of a parent's property interests and financial resources when determining a support obligation).

¶ 9 Because the money he realized from his inheritance does not come under any of the particularized examples of income enumerated in 23 Pa.C.S.A. section 4302, DeRoss argues that this sum cannot be considered income when computing his child support obligation. DeRoss attacks specific portions of the above definition. First, he maintains that this money, although derived from an inheritance, is not "income from an interest in an estate or trust." DeRoss argues that the plain meaning of these words from the above definition refers merely to the **income** derived from any interest in an estate, not from the actual corpus of such an estate or trust. Since DeRoss reinvested the money received by his inheritance in a family home, he argues that he did not receive "income" from the interest in the estate he had received. In other words, DeRoss's inheritance does not generate earnings in the way that an annuity or bank account would. We agree with DeRoss's assertion that this clause contained in the definition only pertains to income (whether a monthly payment, a yearly stipend, or however calculated) that a party receives from an estate or trust. Accordingly, we agree that the cited statutory language does not mandate the conclusion that the money received from the sale of DeRoss's inheritance is income for support purposes. However, this determination is not dispositive of the issue.

¶ 10 DeRoss also contends that the statutory phrase "gains derived from dealings in property" does not apply to render his inheritance income. When he inherited his mother's home, DeRoss argues that his basis in the property was equal to its current market value. Thus, when the property was sold, DeRoss's gain would only be whatever he received from the sale over and above his basis in the property. While DeRoss concedes that this gain could be considered to be income, he disputes that the entire portion of the inheritance is income under this part of the definition.

**2.** The *Darby* court emphasized the words "including, but not limited to" contained in the above definition. Using principles of statutory construction which require that all the words of a statute be given their plain meaning whenever possible, we concluded that "the list plainly is not intended to be all-inclusive." 686 A.2d at 1348. In his brief to this Court, DeRoss contends that the first semi-colon in the definition confines this phrase to modification of only those first categories of income; i.e., wages, salaries and similar items. We find that limiting this clause "including, but not limited to" to only this first set of examples contained in the definition would lead to an absurd result contrary to the clear intent of the legislature. Thus, we refuse to follow DeRoss's interpretation of this phrase. *See* 1 Pa.C.S.A. § 1922(1) (stating the presumption that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable").

¶ 11 DeRoss also argues that he actually realized no gain from the sale of his mother's residence because he immediately reinvested the money in a new home. Humphreys counters with the assertion that DeRoss sold his previous residence, as well as his mother's residence, and used the money received from **both** these sales to buy a larger, more expensive home. Thus, Humphreys maintains, DeRoss did receive a gain from the sale of his mother's home. Although Humphreys' argument is initially appealing, there is no evidence in the record before this Court to support Humphreys' factual assertions. Thus, we cannot conclude that the money received from DeRoss's sale of his mother's home is income based upon this fact. Again, however, this does not end our analysis.

■ ¶ 12 We are guided in our determination by recognizing that the ultimate purpose of a support order is to provide for the best interests and welfare of children from broken homes, and not to punish the payor parent. *See* JOANNE ROSS WILDER, PENNSYLVANIA FAMILY LAW PRACTICE AND PROCEDURE 27 (4 th ed.1998); *see also Opie v. Richart,* 410 Pa.Super. 52, 598 A.2d 1321, 1322 (1991) (stating that child support orders may not be punitive or confiscatory). Because of a parent's inescapable duty to provide for the reasonable needs of one's children to the best of his or her ability, Pennsylvania courts have sometimes required a parent to make sacrifices in order to achieve the support goal. *Opie v. Richart, supra ; Babish,* 521 A.2d at 958 (emphasizing that a parent has the primary obligation to support his children and that he may not diminish his ability to pay child support in order to ensure a more comfortable existence for himself). Our courts have uniformly held that a parent has the obligation to share the benefits of his financial achievements with his children. *See, e.g., Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984).

¶ 13 The key to determining the legislative intent here is that part of the definition of income described as "other entitlements to money or lump sum awards, without regard to source, including lottery winnings." 23 Pa.C.S.A. § 4302. In his brief to this Court, DeRoss acknowledges this phrase but claims that it does not apply because the interest in question here is "income from an interest in an estate or trust." DeRoss's Brief at 8. We determined above, however, that the money involved here is not **income** derived from an interest in an estate; it is the interest in the estate itself. We conclude that this portion of the statutory definition is broad enough to include the money received from DeRoss's inheritance; his inheritance is properly considered an entitlement to money without regard to source.

¶ 14 In reaching this decision, we have also reviewed how other jurisdictions have dealt with the issue of including lump sum gifts or inheritances in the calculation of income available for support purposes. Several of our sister states consider a lump sum inheritance as income available for support, at least when there is a definite sum involved. *See Crayton v. Crayton,* 944 P.2d 487 (Alaska 1997) (holding that a one-time gift from the payor's father was includable as income because the court was not dealing with indeterminate payments arriving at some future time; the court must consider the actual resources available to the payor parent); *Goldberg v. Goldberg,* 698 So.2d 63 (La.App. 4 th Cir. 1997) (considering a party's inheritance when calculating an alimony award because the court must examine the entire financial condition of the parties); *Ford v. Ford,* 1998 Tenn.App., 1998 WL 730201 LEXIS 703 (Tenn.Ct.App.1998) (holding that money received by inheritance can be considered income when it is regularly distributed; a one-time distribution from a life insurance trust that was received prior to the filing of the support petition, however, was not considered income); *Forsythe v. Forsythe,* 41 Va. Cir. 82, 1996 WL 1065613 (Cir. Ct. of Fairfax County, Va.1996) (finding that, because of the all-inclusive definition of "income" contained

in the Virginia Code, a party's inheritance was properly considered as income for the year in which it was received; the court equated an inheritance with a gift, which was specifically included in the statute). *Compare Bryant v. Bryant*, 235 A.D.2d 116, 663 N.Y.S.2d 401 (N.Y.App.Div.1997) (including the full value of a party's inheritance in the calculation of "additional child support," but not in the calculation of a basic child support obligation).

¶ 15 Other states have reached a contrary conclusion, choosing only to include any earnings that an inheritance may generate, i.e., interest payments, when calculating income. *See Halter v. Halter*, 60 Ark.App. 189, 959 S.W.2d 761 (1998) (under statute which refers to the federal income tax definition of income, only earnings that could be generated from an inheritance are considered when calculating support); *Armstrong v. Armstrong*, 831 P.2d 501 (Colo.Ct.App.1992) (imputing interest income on an inheritance and including this interest in the calculation of a support obligation); *Stula v. Stula*, 1998 WL 457694, 1998 Conn.Super. LEXIS 2132 (Conn.Super.Ct.1998) (holding that "income" includes only the income generated by an inheritance when calculating a support obligation); *Connell v. Connell*, 313 N.J.Super. 426, 712 A.2d 1266 (1998) (holding that, in making a support calculation, a court must consider a party's inheritance, whether the inheritance is producing income for the party involved, and the best interests of the children; even though the father had reinvested the totality of his inheritance in real estate that was not providing him with income, the court could impute interest earnings based upon the peculiar facts of the case); *Gainey v. Gainey*, 89 Wash.App. 269, 948 P.2d 865 (1997) (only the interest earned on an inheritance is included in a support calculation).

¶ 16 After considering the purposes behind the Pennsylvania statute, we agree with those of our sister states which hold that the lump sum receipt of an inheritance, part of the overall financial picture of the party owing support, must be considered as income to that party when calculating the support obligation. Accordingly, in the present case, we conclude that, although the money DeRoss received from his inheritance does not neatly fit into the delineated examples contained in the statutory definition of income, the trial court correctly held that this money was available for his daughter's support. This sum, in essence, represents a windfall to DeRoss in the same manner as if DeRoss had won the lottery. Whether DeRoss continues to hold the money from his inheritance in a bank account or he reinvests the inheritance in a new home is immaterial.[3] *Cf. Babish*, 521 A.2d at 958 (remanding a support action where the trial court failed to include a lump sum workers' compensation award as income available for support, stating, "It does not matter that [Father] depleted the substantial award" by using the money to purchase a home for his new family). Thus, the trial court properly included DeRoss's inheritance in the calculations for determining his support obligation.

¶ 17 DeRoss next claims that the order directing attachment of his workers' compensation benefits is in excess of the mandatory permissible amounts under the Consumer Credit Protection Act (the Act), 15 U.S.C.A. section 1601, *et seq.* Specifically, DeRoss argues that, where the party owing support has a second family and is in arrears on existing support orders, the Act only permits attachment of a maximum of fifty-five percent of such party's earnings. DeRoss's income consists of $858.00 in monthly workers' compensation benefits, although DeRoss has a continuing

---

**3.** Although the Dissenting Opinion states, "One must conclude [that DeRoss] will have to sell his new house to comply with the last months of the support order," Op. at 785, we note that there are other less drastic alternatives available. Should the support order create a temporary problem with DeRoss's cash flow, he could, just as one example, use his house as security for a loan.

obligation to pay his workers' compensation attorney twenty percent of this amount. In addition, DeRoss receives $355.00 per month in social security disability benefits. Thus, DeRoss's disposable income is $1,213.00 per month. The maximum amount attachable under the Act ($1,213 × 55%) is, therefore, $667.15 per month. The attachment order under review directs attachment of $692.00 per month. DeRoss urges this Court to correct this violation of the Act.

¶ 18 In its opinion prepared pursuant to Pa.R.A.P.1925(a), the trial court explains that DeRoss had filed an objection based on an alleged violation of the Act prior to the hearing *de novo*. Trial Court Opinion, 7/8/98, at 2. The trial court denied DeRoss's request to hold the attachment in abeyance, and indicated that it would address the issue at the *de novo* hearing. *Id.* However, the court states, "When the denovo [sic] hearing was held several months later, [DeRoss] never raised this issue at all, and we did not address the issue at all. Accordingly, we believe that it has been waived." *Id.*

¶ 19 We have no evidence of record to contradict the trial court's assertion that DeRoss abandoned this issue by failing to raise it at the hearing. DeRoss has failed to provide this Court with a transcript of the hearing, as is his duty to do. *See* Pa.R.A.P.1911(a), (d). *See also Cade v. McDanel*, 451 Pa.Super. 368, 679 A.2d 1266, 1268–69 (1996) (holding that appellant's failure to ensure that a complete certified record is transmitted to the Superior Court, including transcripts of the proceedings below, constitutes a waiver of the issues sought to be examined); *Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993) (same). Accordingly, we find no abuse of discretion in the trial court's conclusion that the issue has been waived.

¶ 20 Order affirmed.

¶ 21 JOYCE, J. files a concurring opinion.

¶ 22 EAKIN, J. files a dissenting opinion in which DEL SOLE, MUSMANNO and ORIE MELVIN, JJ. join.

¶ 23 McEWEN, President Judge files a concurring Statement.

JOYCE, Judge, concurring.

¶ 1 While both the majority and dissent have articulated thoughtful expressions of their respective positions, neither addresses the fact that the applicable statute was amended during the pendency of this litigation. Thus, as a threshold matter, it must first be determined whether the amendments apply and, if so, whether Appellant's receipt of proceeds from his mother's estate constitutes income within the meaning of 23 Pa.C.S.A. § 4302. I thus write separately to express my views on these matters.

¶ 2 The record reflects that Appellant received an inheritance from his mother's estate on August 25, 1997. Several days later, Appellee filed a petition for modification of the existing support order. Hearings were held before a hearing officer and the trial court, culminating in the entry of a final appealable support order on May 20, 1998.

¶ 3 Since its adoption in 1985, section 4302 was modified in 1988, 1993, 1996, 1997 and 1998.[4] The instant action arose well after the 1996 alterations were promulgated. *See* Act of October 16, 1996, P.L. 706, No. 124, § 7 (providing that the act was effective in 60 days). However, the 1997

---

4. Only the 1996 and 1997 amendments are relevant; accordingly, the other enactments will not be further addressed. The 1996 amendment changed the definition of income by adding the phrase "or other entitlements to money or lump sum awards, without regard to source." Act of October 16, P.L. 706, No. 124, § 3. The 1997 amendment further expanded the definition of income to include: bonuses; lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source. Act of December 16, 1997, P.L. 549, No. 58, § 1.1.

amendment was adopted and went into effect during the pendency of the proceedings in the trial court. *See* Act of December 16, 1997, P.L. 549, No. 58, § 23(3) (providing that the amendments to 23 Pa. C.S.A. § 4302 were effective as of January 1, 1998) (hereinafter Act 58). Consequently, there is no doubt that the 1996 modifications apply and that it is only the applicability of Act 58 that is in question.

¶ 4 Pursuant to the rules of statutory construction, no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly. 1. Pa.C.S.A. § 1926. *See also* 1 Pa. C.S.A. § 1953 (providing that whenever a statute is amended, the new provisions shall be construed as being effective only from the date when the amendment became effective). The appellate courts have interpreted these provisions as creating a strong presumption of prospective statutory application only, absent clear language to the contrary. *Nicholson v. Combs*, 550 Pa. 23, 31–32, 703 A.2d 407, 411 (1997); *Brangs v. Brangs*, 407 Pa.Super. 43, 595 A.2d 115, 118 (1991).

> The presumption against retroactive application of statutes and amendments thereto is particularly strong when application of the statute would interfere with existing contractual obligations. Where the application of a statute would make a substantive change in the rights and obligations of the parties, it is presumed that the legislature intended its provisions to have no application to contracts existing prior to the effective date of the law.

> In contrast to statutes which affect substantive rights, such as existing contractual obligations, statutes which aptly can be characterized as remedial, curative or affecting procedural matters may operate retroactively. Thus, it is a basic precept of statutory construction that laws which create remedies, affect procedural avenues, or clarify existing rights, all may escape the presumption

against retrospective application of legislation.

Finally, in order to invoke the presumption against retroactivity, it is necessary to determine whether the proposed application of the enactment at issue would actually be retroactive. A retroactive law is one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. However, our courts have held that where no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date.

*Brangs*, 595 A.2d at 118–119 (citations, quotation marks and emphasis omitted). *Accord Nicholson, supra.*

¶ 5 The instant action is one involving a petition for child support. No vested rights, existing contractual obligations or other substantive rights are at issue as, at all times, Appellant had a legal duty to support his minor child. *See* 23 Pa.C.S.A. § 4321(2) (providing that parents are liable for the support of their children who are unemancipated and 18 years of age or younger). Rather, the amendment merely clarified the definition of what constitutes "income" for purposes of determining a parent's child support obligation. Because the amendment to section 4302 did not affect the parties' substantive rights and were remedial in nature, its application in this case does not violate the presumption against retroactivity.

¶ 6 Having resolved this issue, my analysis begins with a review of the statute, as amended, which defines "income" as including:

(1) wages, salaries, bonuses, fees, compensation in kind, commissions and similar items;

(2) income derived from business;

(3) gains derived from dealings in property;

(4) interest;

(5) rents;

(6) royalties;

(7) dividends;

(8) annuities;

(9) income from life insurance and endowment contracts;

(10) all forms of retirement;

(11) pensions;

(12) income from discharge of indebtedness;

(13) distributive share of partnership gross income;

(14) income in respect of a decedent;

(15) income from an interest in an estate or trust;

(16) military retirement benefits;

(17) railroad employment benefits;

(18) social security benefits;

(19) temporary and permanent disability benefits;

(20) workers' compensation;

(21) unemployment compensation;

(22) other entitlements to money or lump sum awards without regard to source, including lottery winnings;

(23) income tax refunds;

(24) insurance compensation or settlements;

(25) awards or verdicts; and

(26) any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

¶ 7 The object of all statutory construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa. C.S.A. § 1921(a). When the words of a statute are not explicit, the General Assembly's intent may be ascertained by considering, *inter alia:* "(1) [t]he occasion and necessity for the statute; ... (4)[t]he object to be attained; (5)[t]he former law, if any, ... upon the same or similar subjects; ... [and] (7)[t]he contemporaneous legislative history." 1 Pa.C.S.A. § 1921(c).

¶ 8 This Court has construed the pre–1996 version of section 4302 as providing examples of the types of income that are available for child support. *Darby v. Darby*, 455 Pa.Super. 63, 686 A.2d 1346, 1348 (1996). The list is not intended to be inclusive. *Id. See also* 23 Pa.C.S.A. § 4302 (specifically stating that the definition of income includes, but is not limited to, the enumerated items). This Court thus has found a receipt of money to constitute income even though it was not among the items specifically identified in section 4302. *See Darby*, 686 A.2d at 1348 (concluding that father's receipt of a lump sum tort settlement was income under section 4302 even though it was not included therein).

¶ 9 Following *Darby*, the General Assembly essentially codified this Court's decision by amending the statute to include lump sum awards and settlements. *See* Act 58 at § 1.1. It is thus evident that the General Assembly had the opportunity to overturn *Darby* if it disagreed with our interpretation of section 4302. The fact that it did not do so, but incorporated our holding, suggests that the General Assembly approved of this Court's interpretation. *See In the Matter of the Employees of Uniontown Hospital Association*, 432 Pa. 146, 149–150, 247 A.2d 621, 623 (1968) (observing that the failure of the legislature, subsequent to a decision of the appellate court in construing a statute, to change by legislative action the law as interpreted by the court, creates a presumption that the court's interpretation was in accord with the legislative intendment).

¶ 10 Review of the legislature's comments with respect to the 1997 amendments further discloses that the General Assembly was concerned with the issue of parental failure to pay child support. Legislative Journal of the House, No. 64 at 2038–2047 (December 8, 1997). The 1997 amendments were thus aimed at improving child support collection efforts. *Id.* In furtherance of this goal, the legislature codified *Darby* and expanded the definition to include, *inter alia,* "any form of payment

due to and collectible by an individual regardless of source." Act 58, *supra.* With the above considerations in mind, I am persuaded that the entire amount of Appellant's inheritance was properly regarded as income for purposes of determining his support allegation.

¶ 11 While I agree with the result reached by the majority, I do not believe that the proceeds constitute an "entitlement to money or lump sum awards." In enacting this category, the legislature intended it to encompass items such as lottery, prize or similar winnings rather than proceeds resulting from the distribution of an estate. Rather, I find that the monies here fall within the last category, i.e., "any form of payment due to and collectible by an individual regardless of source."

¶ 12 Appellant was the sole beneficiary of his mother's estate. Upon settling the estate, the executor was required to pay Appellant the proceeds remaining after payment of the estate's expenses. The distribution of the estate proceeds to the designated beneficiary thus constituted a payment which was due to and collectible by Appellant. Viewed in this manner, Appellant's inheritance constituted income within the meaning of section 4302. I therefore would affirm the order entered by the trial court.[5]

EAKIN, Judge, dissenting.

¶ 1 Appellant DeRoss has "disposable income" of $1,213, less attorney fees of $171.60, or just over $1,000 coming in each month. The hearing officer added $4,525 "imputed income," because DeRoss inherited the proceeds from the sale of his deceased mother's house, which he used to buy a better house for his present family.

The result is a support order of more than two-thirds his actual income.

¶ 2 An inheritance may change the ability of an obligor to pay support, of this there is no disagreement; the issue is how to factor it in, since it isn't really "income" in the sense of money "coming in" from one's livelihood. Conceptually, there are several options. The first, reached by the majority through interpretation of the statute, would treat all inheritances of money as income, and recalculate support obligations accordingly; under this interpretation, inheritances other than money are not income at all.

¶ 3 Not finding the substance or concept of inheritance within the statutory definition of income, I must subscribe to another option, which would allow an inheritance in any form to be considered by the trial court in one of two ways. If articulably appropriate, the court may include the income (actual or imputed) generated by the inherited property, within the income of the appropriate party before calculating the order. Alternatively, the amount of support would be determined without considering the inheritance, but a suitable deviation would be allowed thereafter, based on the inheritance. Either method would allow the trial court to fashion an order most appropriate to the circumstance, rather than mechanically treating all inheritances of money as income, no matter the consequences.

¶ 4 This inheritance gave appellant $83,000 with which to generate income or reduce his expenses. However, to conclude he now has $4,525 additional income, when his actual receipts barely exceed $1,000 is confiscatory.[6] Saying Mr. DeRoss has in-

5. I agree with the majority that Appellant has waived his challenge to the attachment of his worker's compensation benefits in excess of the amounts mandated by federal law. Consequently, I join in the majority's disposition of Appellant's second issue.

6. The issue challenging the amount of attachment may be waived, but it is significant the law precludes attaching more than 55% of net

income. *See Consumer Credit Protection Act,* 15 U.S.C. § 1673(b). Here, 57% of appellant's real income is attached, even without the attorney's entitlement. We hold in abeyance, pending our result, the appeal in *Hawley v. Reynolds,* 178 Harrisburg 1998; there, treating the inheritance as income caused an order which actually exceeds the obligor's receipts each month. Forcing an heir to live

come five times the amount he really receives each month is a fiction that would make the IRS swallow hard. One must conclude he will have to sell his new house to comply with the last months of the support order.[7]

¶ 5 The statutory definition of income is a conglomeration into which an inheritance does not easily fit. The majority's thoughtful analysis does not find an inheritance enumerated in the definition itself; it is found in the phrase "other entitlements to money or lump sum awards, without regard to source, including lottery winnings."[8] Majority Opinion, at 777. I agree the specifics of the definition are not meant to be exhaustive,[9] but that does not equate to a finding it is intended to be boundless.

¶ 6 The phrase "other entitlements to money" is not meant to encompass in the definitional stew every ingredient on the shelf of human experience. It is more an offer to "season to taste," a catchall to prevent the inventive obligor from calling his income something else to avoid support. An inheritance is certainly not an obscure concept, escaping the considerations of the legislative chefs.

¶ 7 Inheritance law has a history much older than the calculations of child support payments; the legal passage of property upon death has been the subject of laws since there were laws. This is simply not the way our legislature would have dealt with an intent to include something as common and unambiguous as an inheritance. They would not have relied on such a broad catchall to do so – they would have said so outright.[10] Since they did not, I can only conclude the intention was to exclude it.

¶ 8 As the majority also notes, the underlying goal of the support guidelines is to ensure "persons similarly situated shall be treated uniformly." Majority Opinion, at 777. At first blush, requiring all inheritances to be treated as income would seem to afford "similar treatment," but this is only true if one inherits similar amounts of similar property. Common sense tells us there are as many types of inheritances as there are people who inherit, yet the majority isolates cash inheritances from all other types without providing a reason to distinguish the two classes of beneficiaries. People who inherit money will be treated one way; those inheriting anything else will be treated another.

¶ 9 This disparate treatment is not logical, and leads to unfairness and absurd results. Conversely, there is logic to the exclusion of inheritances, and "[i]n interpreting statutes, it is axiomatic that the legislature does not intend an absurd or unreasonable result." *Commonwealth v.*

entirely off their inheritance by a support award greater than 100% of true income cannot be the mandated result of the law.

7. Forcing him to mortgage the house is equally unfair, and impractical. The bank knows his true available income is $1000 a month, less a $692 support obligation; how much could he borrow when he lacks the means to repay?

8. An inheritance is not a "lump sum award." An inheritance is not an *award* of any kind, and the term "lump sum" bespeaks an amalgamation, something lumped together; it is clearly not a reference to the transfer of a decedent's property. Lottery winnings are certainly not inheritances, so we are left with "other entitlements to money."

9. I disagree, however, with the majority's application of the phrase "including, but not limited to" found in the first clause. This phrase is clearly not introductory to the whole of the definition, and is only meant to modify the clause "compensation for services" within whose commas it is contained.

10. I find the same logic precludes including an inheritance in "any form of payment due to and collectible by an individual regardless of source," as the concurring opinion suggests. A "payment" bespeaks compensation, or discharge of a debt or obligation, not a passing of property from deceased to heir; no one speaks of getting "paid" from a parent's estate. While the executor was obliged to give appellant his inheritance, it was not as compensation, and was not in discharge of any debt.

*Beachey,* 728 A.2d 912, 913 (Pa.1999); *see also* 1 Pa.C.S. § 1922(1) (presumptions in ascertaining legislative intent).

¶ 10 The calculation of child support should not be determined by the serendipity of the nature of property inherited. I find no logic in singling out people who inherit money and treating them differently than people who inherit land, or stocks, or jewelry. What of the heir who *elects* to take in kind rather than receiving money; if this is renouncing "income," do we nevertheless impute this "income" to them, as we would to a parent renouncing a paycheck? If so, a legitimate request to take a family homestead or heirloom in kind could, in the majority's broad interpretation of "entitlement to money," make this a financial impossibility, defeating the continuity of family property and tradition. What of the heir who would renounce altogether in favor of a needy sibling? Let us not forget, if the custodial parent or the children themselves inherit money, it must likewise be income, reducing the obligor's payments; if they inherit other property, a different analysis must take place.

¶ 11 Any future heir with a support obligation, reading the majority's opinion, must ask to take any significant inheritance in kind, or delay settling the estate until the obligation expires; otherwise, their real income will become irrelevant, subsumed in an unrealistic calculation. Parents of children with support orders (or parents who *worry* their children may one day have an order) must change their wills, or face their legacy being passed through the ex-spouse of their child in the name of support. Anyone who has counseled such good people can attest to the anathema of this result. No grandparent wants to leave their worldly goods to the domestic relations office.

¶ 12 Those states that have addressed the issue through caselaw fall into the two approaches described above: (1) the income generated, actual or imputed, may be added to income; or (2) the obligation is determined from the guidelines without regard to the inheritance, but the inheritance (or income therefrom) is considered a reason for deviating from the guidelines.[11]

¶ 13 I believe the better rule, consistent with the goals of support law and the rights of all parties, would allow the trial court to treat an inheritance as an asset available to generate income, *see, e.g., Connell v. Connell,* 313 N.J.Super. 426, 712 A.2d 1266 (1998), or to deviate from the normal calculation once made, with the obligation to articulate reasons for the choice made. Our support guidelines already have provisions allowing the latter.

**11.** I do not believe the cases cited by the majority support its result to the degree claimed. In *Crayton v. Crayton,* 944 P.2d 487 (Alaska 1997), the court was calculating support for a period in the past, not a future order. While proper to consider for past obligations, the court specifically held inclusion as income of a one-time gift or inheritance would unfairly inflate future obligations; the principal amounts of gifts and inheritances is not income. *See also Nass v. Seaton,* 904 P.2d 412 (Alaska 1995).

In *Goldberg v. Goldberg,* 698 So.2d 63 (La. App. 4 th Cir.1997), the issue was alimony, not child support. Further, the holding was to "consider" the inheritance; it was not held to be "income."

In *Ford v. Ford,* 1998 WL 730201, 1998 Tenn. App. LEXIS 703 (Tenn.Ct.App.1998), a regular distribution of money from an inheritance was appropriately considered as income; a one-time distribution of life insurance proceeds was not. A one-time inheritance is much different than a "regular distribution," which is within "income from an interest in an estate" in Pennsylvania.

Only in *Forsythe v. Forsythe,* 41 Va. Cir. 82, 1996 WL 1065613 (Cir. Ct. of Fairfax County, Va.1996) do we find inclusion of an inheritance as "income;" in this alimony case, the parties incorporated the definition of the child support statute into their alimony agreement. The decision, of a county court, equates an inheritance to a "gift," a term within Virginia's statutory definition, but not present in Pennsylvania.

In addition to the cases cited by the majority as *contrary* to its conclusion, *see Bryant v. Bryant,* 235 A.D.2d 116, 663 N.Y.S.2d 401 (N.Y.App.Div.1997); *Helgeson v. Helgeson,* 528 N.W.2d 91 (Wis.Ct.App.1994); *Reech v. Reech,* , 1997 WL 37740, 1997 Ohio App. LEXIS 318 (Ohio Ct.App.1997).

Pennsylvania Rule of Civil Procedure 1910.16–4 lists two applicable factors which allow the trial court the discretion to deviate from the presumed guideline amount upon the request of either party: "(5) assets of the parties" and "(8) other relevant and appropriate factors, including the best interests of the child or children." These clauses easily encompass an inheritance of money or property, and in a more appropriate and flexible manner.

¶ 14 Trying to fit the vast ramifications of inheritance law into the one-size-fits-all catch phrase of "entitlement to money" or "any form of payment" is like trying to wear a tent: it's big enough, but that's not what a tent is for. I find no reason to force such a fit, or to invite the injustices that must, as here, ensue. If the legislature wanted to include inheritances of money or property or both, it would have said so. It did not, and for good reason: it would be inequitable in application, and the law already provides the means to consider an inheritance by deviation from the guidelines.

¶ 15 Accordingly, I must dissent from the position of my colleagues.

¶ 16 DEL SOLE, MUSMANNO and ORIE MELVIN, JJ. join in this Dissenting Opinion by EAKIN, J.

McEWEN, President Judge, concurring:

¶ 1 As I agree with the conclusion of my distinguished colleague, Judge Joseph A. Hudock, that the inheritance received by appellant must be included, pursuant to 23 Pa.C.S. § 4302, in the income attributable to appellant, I am unable to find that the learned Judge Anthony J. Vardaro committed an abuse of discretion when he ordered appellant to pay $607.45 per month in child support and $84.55 in arrearages. The reality brought into sharp focus by the well-reasoned dissent of Judge Eakin, however, illuminates the problems caused by such lump sum receipts, prompting the query as to the need for a formula, from the Legislature or the Supreme Court, to more fairly and uniformly adjust actual incomes to reflect unusual income receipts.